BELITA FANNON BROOKS *v*. CHRISTINE BLOOM.

[No. 871A154. Filed March 7, 1972.]

G. *Stanley Hood,* of Fort Wayne, for appellant.

*William E. Borror, Hunt, Suedhoff, Borror & Eilbacher,* of Fort Wayne, for appellee.

SULLIVAN, J.—This appeal is taken from a directed verdict for defendant. The litigation arose by reason of injuries sustained by plaintiff-appellant while riding as a "guest" in defendant-appellee's automobile.

The record discloses that appellant and appellee were returning to Fort Wayne, Indiana, from a dance at Lake Tippecanoe at approximately 1:30 A.M. on July 4, 1967. While appellant herself was asleep in the front seat of the automobile, appellee fell asleep, lost control of her car causing it to roll over twice some seven miles west of Columbia City. Plaintiff-appellant contends that as a direct and proximate result of appellee's willful and wanton misconduct, she suffered permanent injuries, and that as a result of said injuries, she was hospitalized on three separate occasions, missed a total of 684 work hours causing lost income in the sum of $2,152.00.

The sole issue is whether under the existing circumstances appellee's act of falling asleep while operating the automobile is sufficient to require submission of the case to the jury upon the question of willful or wanton misconduct.

The act of falling asleep at the wheel of an automobile, standing alone, is generally held to permit, at most, an inference of negligence. See 28 A.L.R. 2d 12, at 61, § 32. However, in the event the driver has had some prior warning as to the likelihood of his falling asleep, continuing to drive may well demonstrate adequately the "perverse motive" or "mental attitude adverse to the welfare of the guest" inherent in willful or wanton misconduct required by our Indiana Guest Statute, IC 1971, 9-3-3-1, Ind. Ann. Stat. § 47-1021 (Burns 1965). *Schwing* v. *McKibbin* (1970), 148 Ind. 222, 264 N. E. 2d 629; *Mazza* v. *Kelly* (1970), 147 Ind. App. 33, 258 N. E. 2d 171.

## *VERBAL COMMENT OF GUEST DID NOT CONSTITUTE WARNING SUFFICIENT TO INFER EXISTENCE OF WILLFUL OR WANTON MISCONDUCT ON PART OF HOST DRIVER*

By reason of the fact that appellant made a comment to appellee which related to appellee's driving just prior to the accident, the initial question in this appeal is whether that comment constituted a cogent warning which sufficiently bore upon drowsiness or sleepiness on the part of appellee so that ignoring such "warning" constituted a prima facie case of willful or wanton misconduct.

We are unable to extract any evidence in the trial record from which a reasonable man could infer that appellee was fatigued and was likely to fall asleep; but yet failed to heed a warning with reckless indifference to the consequences.

In the year the accident took place, the Fourth of July fell on a Tuesday. In keeping with the American tradition, the parties herein had been involved in an extended weekend.

Although appellant and appellee had travelled together that weekend, they were not continually in each other's company. Appellant in fact testified at trial that the first time she remembered seeing appellee on July 3, 1967, the eve of the accident, was during the early evening when they departed for the dance at Lake Tippecanoe. Once at the dance, the girls parted company until it was time to return to Fort Wayne. Appellant testified further that she did not see appellee drink any alcoholic beverage during the course of the evening, although she stated that appellee later admitted to having "some beer." In any event, appellant described appellee's condition at the time of departure from the dance for home as "normal", and that "she [appellee] was acting fine."

Just prior to the accident, appellee's car swerved and appellant commented: "you're kinda going to the side of the road." Appellant testified that appellee "snapped back" at her so appellant put her head back on the seat and fell asleep. Shortly thereafter the accident took place.

Appellant attempts to equate the comment she made to appellee with the express warnings given to the driver in *Mazza* v. *Kelly, supra*. We cannot agree with that assertion. In *Mazza*, we held that the driver was conscious of his misconduct based on undisputed evidence of repeated warnings given to the driver by all passengers, coupled with the excessive speed of the automobile. There, the driver ignored the first warnings, but acknowledged his passengers' subsequent pleadings to slow down by assuring them that everything was "OK"; nevertheless, he continued to speed and the accident ensued.

We did not in the *Mazza* case, nor do we now hold that more than one comment or warning is necessary as a matter of law to establish actual knowledge on the part of the driver of danger confronting him. Depending upon the facts, a jury might properly infer such knowledge by reason of a single comment or warning. *Schwing* v. *Mc-*

*Kibbin, supra.* Repeated warnings, however, simply lend credence to an inference of the perverseness or attitude adverse to the guest's welfare which is the *sine qua non* of recovery under the Indiana Guest Statute. *Clouse* v. *Peden* (1962), 243 Ind. 390, 186 N. E. 2d 1; *Mazza* v. *Kelly, supra.* See *Schwing* v. *McKibbin, supra.*

In the case at bar, appellant never testified that her comment to appellee alluded to appellee's drowsiness, nor can we construe appellant's comment, "* * * you're kinda going to the side of the road", to relate necessarily to the driver being sleepy. Suffice it to say, there is more than one reason why a car might veer to the side of the road. As appellee suggests, if plaintiff-appellant intended her comment to "warn" her host of impending sleep, undoubtedly she would have so testified at trial. Instead, plaintiff-appellant testified that she (appellant) reclined and fell asleep herself after the comment was made. Such behavior is hardly characteristic of one in fear of life and limb.

### *APPELLANT DID NOT ESTABLISH PRIMA FACIE THAT APPELLEE IGNORED "PREMONITORY SYMPTOMS" OF SLEEP SO AS TO EVINCE ENTIRE ABANDONMENT OF CARE AND HEEDLESS INDIFFERENCE TO SAFETY OF GUEST.*

It is axiomatic that one ordinarily does not fall asleep without some premonitory symptoms or signals. That is, as a general rule sleep does not come unannounced. In the instant case, we have little doubt that appellee did not instantaneously pass from a totally alert and lucid state to one of unconsciousness. Nevertheless, a plaintiff-guest under such circumstances has the evidentiary burden of proving prima facie, that there existed premonitory symptoms to such a degree that by ignoring the same, the host driver exhibited the perverse attitude which is a necessary element for recovery under our statute. In other words, there must

be a showing that the host has manifestly disregarded the warnings of impending sleep to such a degree that his conduct typifies either intentional injury or a conscious defiance of the probable results. Requiring less would serve to dilute the elements required by the statute.

Although our research discloses no Indiana holding which resolves the question under consideration, one case, *Coconower* v. *Stoddard* (1932), 96 Ind. App. 287, 182 N. E. 2d 466, contains dictum which prompts us to follow the path we hereinafter travel. The court decided the *Coconower* case upon the issue of a jury instruction which erroneously injected the concept of contributory negligence. Language was used, however, which strongly implied that while one who is involuntarily overcome by sleep while driving may be guilty of carelessness or negligence, he is not from the fact of sleep alone, guilty of reckless or wanton operation of the vehicle.

Other jurisdictions have treated the question of "premonitory symptoms" of sleep while in the operation of a motor vehicle. The leading case dealing with the "premonitory symptoms" test is perhaps *Bushnell* v. *Bushnell* (1925), 103 Conn. 583, 131 A. 432. There the court held that although one cannot fix with certainty the precise moment at which one lapses into an unconscious state, one ordinarily cannot fall asleep while driving an automobile "without having relaxed the vigilance which the law requires, without being negligent." 131 A. at 435. The act of the host falling asleep was there held to permit a reasonable inference of "ordinary"[1] negligence.

The rationale of the *Bushnell* case has been extended to support a finding of "gross" negligence in states which have adopted that concept under their respective guest statutes, but only in instances in which the host has had prior warning

---

1. Unlike Connecticut and some other states, Indiana does not recognize degrees of negligence. The *Bushnell* case and others dealing with gross negligence and the like, are cited, however, for the proposition that sleep does not ordinarily come without warning.

of the liklihood of sleep. See Anno. 28 A.L.R. 2d 12, at 62, § 33.[2] Where "willful or wanton" misconduct is in issue, however, recovery has been generally denied absent a showing that the host consciously disregarded warnings with an indifference to the fact that injury would probably, as opposed to possibly, result.

In *Covington* v. *Carley* (1944), 197 Miss. 535, 19 So. 2d 817, 819, the Court eloquently stated the principle as follows:

"* * * we do not mean to lay down an arbitrary rule that one who by falling asleep at the wheel of an automobile injures a guest, may in no event be guilty of 'wanton misconduct'. Even as the deliberate shutting of one's eyes to conscious peril figuratively typifies wantonness or recklessness, so the literal act of closing one's eyes in sleep is equally typical of unconscious action. Yet it is not the act of falling asleep that is under scrutiny, but conduct in driving while beset with drowsiness which portends complete incapacity and reasonably certain casualty. Unless such act is portrayed against a background of prior experience or otherwise made so reasonably certain as to constitute mere drowsiness a recognizable and recognized harbinger of imminent disaster, it does not confront a driver with a present and envisaged calamity which he either deliberately achieves or wantonly ignores.

The act or omission must, under the statute, be more than that of mere inadvertence or momentary thoughtlessness."

Of particularly persuasive effect is *Forsman* v. *Colton* (1933), 136 Cal. App. 97, 28 P. 2d 429, 431, wherein the Court quoting from *Kaplan* v. *Kaplan* (1931), 213 Iowa 646, 239 N. W. 682 gave vitality to the above-mentioned dictum from the Indiana decision in *Coconower* v. *Stoddard, supra:*

" '* * * The fact that the father permitted sleep to overcome him and drove the car while asleep is the only proposition

---

2. But see *Barrell* v. *Wessell* (La. Ct. of App. 1953) 65 So. 2d 819, which held that driving an automobile after period of 22 hours without sleep, consuming two bottles of beer, and poor ventilation in automobile would put driver on notice that he might fall asleep, but did not amount to "gross or wanton" negligence within the meaning of the Kansas Guest Statute.

argued by the parties as the cause of the accident. There is no evidence of any other cause. Can it be said that a person, while driving along the highway, who is involuntarily overcome by sleep is guilty of reckless operation of the automobile within the meaning of the law? We think not. * * * His unconscious conduct while asleep, or semiconscious conduct while going to sleep, or the mere fact that he permitted sleep to overcome him, do not evince a heedless disregard of the rights of the daughter.' *Coconower* v. *Stoddard* (Ind. App.), 182 N. E. 466, 469.

Weighing the evidence adduced in the light of the definition of willful misconduct, we must hold that no willful misconduct is here shown and the order granting the non-suit was proper."

To the same effect are *Sohm* v. *Sohm* (1942), 212 Minn. 316, 3 N. W. 2d 496 and *Rode* v. *Roberts* (1936), 11 Cal. App. 2d 638, 54 P. 2d 498.

Lest the casual observer deem our holding here to be founded upon outdated authorities, we note with great interest *Joslyn* v. *Callison* (1970), 12 Cal. App. 3d 788, 90 Cal. Rptr. 884, 887 wherein the law of California (not a jurisdiction particularly noted for hesitance in applying novel or "forward looking" theories of tort liability) was set forth, insofar as here appropriate, as follows:

"Where there is no evidence that the driver knew, or should have known, he was drowsy, and the only evidence tending to prove the cause of the accident consists of the inferences to be drawn from the physical conditions and circumstances surrounding the crash, the evidence is insufficient to show willful misconduct."

The guidance provided by the reasoned authorities above-cited, together with our review of the record, with particular attention given to all reasonable inferences which a reasonable jury might draw from such record, lead us to conclude as a matter of law that plaintiff-appellant did not sustain her burden of proving prima facie that appellee's conduct evinced an entire abandonment of care and heedless indifference to the safety of his passenger. Neither

plaintiff's comment that defendant was veering toward the side of the road, nor defendant's act of falling asleep, nor the combination of the two, are sufficient to constitute prima facie proof of a conscious disregard of a warning or warnings.

Because the record lacks evidence sufficient to support a reasonable inference that appellee-defendant's frame of mind was perverse or adverse to the welfare of her guest-passenger, we affirm the decision of the trial court.

White, P.J. and Buchanan, J., concur.

NOTE.—Reported in 279 N. E. 2d 591.