**Alan BURELL, Appellant
(Defendant Below),**

v.

**Rachael RIGGS, Michael Riggs and Susan Riggs, Appellees (Plaintiffs Below).**

**No. 53A01–9003–CV–116.**

Court of Appeals of Indiana,
First District.

Aug. 2, 1990.

Rehearing Denied Sept. 20, 1990.

William H. Kelley, James L. Whitlatch, Bunger, Robertson, Kelley & Steger, Bloomington, for appellant.

Mark C. Ladendorf, Townsend, Yosha & Cline, Indianapolis, for appellees.

ROBERTSON, Judge.

Alan Burell appeals an order of the trial court granting the plaintiffs Riggses a new trial. Burell argues that the trial court's order for a new trial cannot be sustained on either the basis the jury's verdict is against the weight of the evidence or clearly erroneous.[1] We agree; accordingly, we direct the trial court to enter judgment on the jury's verdict.

Riggs sustained injury when the car in which she was a passenger struck a guardrail. The incident occurred near Birmingham, Alabama at approximately 5:30 a.m., March 31, 1987, when defendant Burell fell asleep at the wheel. The car belonged to Brian Nugen, another passenger. Riggs and her friends were enroute to Bloomington, Indiana after having attended the 1987 NCAA Mens Basketball Championship game in New Orleans, Louisiana.

Ind. Trial Rule 59(J)(7) governs the granting of a new trial. The rule provides in relevant part that

[i]n reviewing the evidence, the court shall grant a new trial if it determines that the verdict of a non-advisory jury is against the weight of the evidence; and shall enter judgment, subject to the provisions herein, if the court determines that the verdict of a non-advisory jury is clearly erroneous as contrary to or not supported by the evidence, ... In its

order correcting error the court shall direct final judgment to be entered or shall correct the error without a new trial unless such relief is shown to be impracticable or unfair to any of the parties or is otherwise improper; ... If corrective relief is granted, the court shall specify the general reasons therefor. When a new trial is granted because the verdict, findings or judgment do not accord with the evidence, the court shall make special findings of fact upon each material issue or element of the claim or defense upon which a new trial is granted. Such finding shall indicate whether the decision is against the weight of the evidence or whether it is clearly erroneous as contrary to or not supported by the evidence; if the decision is found to be against the weight of the evidence, the findings shall relate the supporting and opposing evidence to each issue upon which a new trial is granted; if the decision is found to be clearly erroneous as contrary to or not supported by the evidence, the findings shall show why judgment was not entered upon the evidence.

A jury verdict will be reinstated where the order of the trial court overturning the verdict on the basis the verdict is against the weight of the evidence fails to demonstrate by setting forth the supporting and opposing evidence that a new trial is warranted. *State v. White* (1985), Ind., 474 N.E.2d 995; *Tancos v. A.W., Inc.* (1986), Ind.App., 502 N.E.2d 109, 115, *trans. denied.*

The trial court's findings and judgment read in part as follows:

1. The evidence is uncontroverted that the defendant, Alan Burell, fell asleep while operating a vehicle and as a result of his conduct a traffic accident occurred in which the plaintiff, Rachel Riggs was physically injured.

2. The evidence is uncontroverted that Alan Burell had tried to guard against falling asleep by ingesting caffeine a short time before the accident occurred.

---

1. Given our resolution of this issue, we need not address Burell's contention that the trial court

erroneously chose to apply Indiana law.

3. The jury's verdict for the defendant, Alan Burell, and against the plaintiffs is contrary to the clear import of this evidence and the reasonable inferences that must be drawn therefrom.

4. The evidence supporting the jury's verdict in favor of the defendant, Brian Nugen, and against the plaintiffs is conflicting and the jury could infer from that evidence that Brian Nugen was not responsible for Alan Burell's conduct leading to the accident.

5. The granting of a new trial for the plaintiffs against Alan Burell is the more appropriate remedy in this case.

The court, therefore, concludes that the plaintiffs' Motion to Correct Errors should be granted as it relates to the defendant, Alan Burell, and should be denied as it relates to the defendant, Brian Nugen.

We cannot say with confidence which standard the trial court applied in setting aside the jury's verdict. On the one hand, the rule provides that a new trial shall be granted if the verdict is against the weight of the evidence. Presumably, the court would have entered a judgment for the plaintiffs if it determined that the jury's verdict was not supported by substantial evidence of probative value. On the other hand, the court's finding that the verdict "is contrary to the clear import of this evidence" and the absence of findings relating the supporting and opposing evidence required by the rule when the court determines the verdict to be against the weight of the evidence suggests the court found the verdict to be clearly erroneous because it was contrary to the evidence. Neither outcome can be sustained on this record.

■ Inasmuch as Burell admitted during discovery that he fell asleep at the wheel and was at least partially responsible for the collision, the focus logically shifts to Rachel Riggs' conduct as her own contributory negligence would preclude recovery. In Indiana, the question of contributory negligence is ordinarily a question of fact. It is only when there is no dispute upon the facts and only one conclusion can be drawn therefrom that it may be decided as a question of law. *Hundt v. LaCrosse Grain Co., Inc.* (1983), Ind., 446 N.E.2d 327, 328.

■ A passenger in an automobile must exercise for her own protection the degree of care an ordinarily reasonable person would exercise in like or similar circumstances. A passenger whose conduct falls below this standard and proximately contributes to the legal harm she has suffered is contributorily negligent. *Memorial Hospital of South Bend, Inc. v. Scott* (1973), 261 Ind. 27, 300 N.E.2d 50, 56; *Lindley v. Sink* (1940), 218 Ind. 1, 30 N.E.2d 456. As a general rule, unless or until she has notice, a plaintiff has the right to assume others who owe her a duty of reasonable care will exercise such care. *Id.* at 18–9, 30 N.E.2d 456; *Berg v. Glinos* (1989), Ind. App., 538 N.E.2d 979, 981. Despite the general validity of this precept, however, occasions arise where a reasonable person may not rely upon the awareness or ability of all others to exercise due to care to avoid her injury in determining the quantum of care she should exercise for her own protection. *Phillips v. Croy* (1977), 173 Ind.App. 401, 363 N.E.2d 1283, 1285, *trans. denied.* "The assumption [that others will use due care] is not consistent with the exercise of due care for one's own safety where relying upon it means ignoring a condition which is openly fraught with peril to the person." 57 Am.Jur.2d 738 *Negligence,* § 335 cited in *Phillips,* 363 N.E.2d at 1285.

Indiana courts to our knowledge have not considered the contributory negligence of a passenger who goes to sleep knowing that the driver of the vehicle is in a sleepy or drowsy condition. In fact, no Indiana case addresses directly a driver's ordinary negligence in continuing to operate a vehicle after experiencing premonitory symptoms indicative of sleep. We have observed in dicta, however, the general rule in other jurisdictions that the act of falling asleep at the wheel, standing alone, permits, at most, an inference of negligence. *Brooks v. Bloom* (1972), 151 Ind.App. 312, 314, 279 N.E.2d 591. Consistent with this approach are the majority of decisions in other jurisdictions which treat a passen-

ger's knowledge of the driver's sleepy condition as a factor to be taken into consideration in determining the contributory negligence of a sleeping passenger. *See* Annot., 1 A.L.R.4th 556 (1980) and cases cited therein.

■ Although the Riggses argue that there is absolutely no evidence whatsoever that Rachel Riggs contributed to or caused her injuries, we find a sufficient factual basis in the record for inferring both that Riggs knew or in the exercise of reasonable care should have recognized the danger to which she was subjecting herself and that her failure to exercise reasonable care to avoid injury proximately contributed to her injury. The record shows Riggs' knowledge of Burell's drowsy condition:

Q. What is your last recollection before the accident?

(Riggs) A. I was sleeping behind the driver, and I remember stopping to get No–Doz.

Q. Stopping to get No–Doz?

A. Uh-huh.

Q. Was there any discussion about that?

A. Yes.

Q. What was said?

A. Alan said he needed something to help him stay awake, so we stopped to get some No–Doz. He didn't have, nobody had enough money to get the No–Doz, so the guy in the gas station gave him a cup of coffee.

Q. What did you do then?

A. I went back to sleep.

\* \* \* \* \* \*

Q. Before the accident, did you have any reason to believe that Allen (sic) was not capable of driving the car?

A. Yeah. He stopped to get No–Doz and commented he was really tired, and we had switched on and off because we were all really tired.

Q. You were aware of that before the accident?

A. Yes.

Q. You were aware of that when you started from the gas station where he had gotten coffee?

A. Yes.

Q. You were aware of the fact that Alan had indicated he was very tired?

A. Yes.

(R. 620–2).

The record also shows Riggs' knowledge of prior events which might ordinarily lead to fatigue and be indicative of Burell's need to rest. After all, Riggs traveled and roomed with Burell and the three other persons in the car over the course of the extended weekend. The group departed from Bloomington around dinnertime Friday evening March 28, 1987, driving in shifts until they reached New Orleans at about 5:00–6:00 a.m. the next day. The evening before the return trip they spent together at a Holiday Inn. The testimony shows they went to sleep around 2:00 or 3:00 a.m. and arose at about 8:30 a.m. After the championship game on Monday night, they stayed for a victory celebration, then left for Bloomington around 1:00 Tuesday morning. The car collided with the guardrails at about 5:30 a.m.

Finally, the jury might, in assessing Riggs' conduct, rightly accord some weight to the fact that all of the other occupants in the vehicle including Riggs were sleeping at the time of the collision. Burell had already driven a one-hour shift when Riggs said she could no longer stay awake and asked Burell to relieve her. Burell drove another two and one-half hours before he fell asleep. The other passengers were too tired to drive.

The evidence recited above also is adequate to infer that Riggs could anticipate the consequences of riding or continuing to ride with a weary driver. Indeed, all of the passengers deferred to Burell *because* they recognized the danger inherent in driving when extremely tired.

■ To the extent then that the trial court intended to set aside the judgment on the verdict because it is contrary to or not supported by the evidence and therefore clearly erroneous, the court's action cannot be upheld as there is evidence in the record indicating that Rachel Riggs may have been contributorily negligent. A verdict is

not clearly erroneous if there is relevant evidence supporting the claim, albeit conflicting. *Berg*, 538 N.E.2d at 983. The trial court's failure to demonstrate that the jury's determination is against the weight of all the evidence by relating the supporting and opposing evidence in its findings precludes us from sustaining its order on the alternative ground that the verdict is against the weight of the evidence. *White*, 474 N.E.2d 995. For these reasons, we conclude that the grant of a new trial must be reversed.

Reversed and remanded to the trial court with instructions to reinstate the judgment entered upon the verdict.

GARRARD, J., concurs.

RATLIFF, C.J., concurs with separate opinion.

RATLIFF, Chief Judge, concurring.

Ind. Trial Rule 59(J)(7) clearly requires a court granting a new trial because the decision is against the weight of the evidence to make findings which relate the supporting and opposing evidence. That, the trial court did not do. Our supreme court in *State v. White* (1985), Ind., 474 N.E.2d 995, held failure to make such findings required reversal. The supreme court in *White* reversed our decision remanding to the trial court for adequate findings and directed the trial court to enter judgment on the verdict. We must do the same here. Thus, I concur solely on the basis of the decision in *White*.