CITY OF NEW HAVEN, Appellant–
Counter–Claimant,

v.

Penny (Bradtmueller) **REICHHART** and Chemical Waste Management of Indiana, L.L.C., Appellees–Counter–Defendants.

No. 90A02–9904–CV–247.

Court of Appeals of Indiana.

June 8, 2000.

James P. Fenton, Alan L. Verplanck, Eilbacher Scott, P.C., Cathleen M. Shrader, Barrett & McNagny, Fort Wayne, Indiana, Attorneys for Appellant.

Mark E. Giaquinta, Robert W. Eherenman, Haller & Colvin, P.C., Fort Wayne, Indiana, Attorneys for Appellees.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

The City of New Haven ("the City") appeals from the dismissal of its malicious prosecution claim against Penny Reichhart ("Reichhart") and Chemical Waste Management of Indiana, L.L.C. ("CWMI"). The City presents several issues for our review, which we consolidate and restate as whether the City failed to state a claim upon which relief can be granted under Indiana Trial Rule 12(B)(6).

We affirm.

### FACTS AND PROCEDURAL HISTORY

This court has previously stated the facts of this case in *Reichhart v. City of New Haven,*[1] 674 N.E.2d 27 (Ind.Ct.App. 1996), *trans. denied.* We quote from that opinion as follows:

> CWMI operates a hazardous waste disposal facility outside the municipal boundaries of New Haven. CWMI planned to expand the facility. The City and its Mayor, Lynn Shaw, opposed the planned expansion. On November 26, 1991, a special New Haven Common Council meeting was held to consider annexing territory that included CWMI's landfill in order to gain regulatory control of the property, and an ordinance was introduced to that effect. The next day, landfill manager Doug Clark told Reichhart, who owned property in New Haven and was an employee of CWMI, about the City's action and raised the possibility of Reichhart, as a taxpayer of the City of New Haven, filing a lawsuit against the City with CWMI's assistance. Reichhart contacted Leonardo Robinson, CWMI's in-house counsel in Chicago, and Robinson arranged for CWMI's Indianapolis coun-

sel, Plews & Shadley, to represent Reichhart at CWMI's expense.

On December 10, 1991, Plews filed a two-count complaint on Reichhart's behalf in Allen Superior Court. Under Count I, Reichhart alleged that the City had violated the Open Door Law in introducing the annexation ordinance and sought to enjoin the City from considering the ordinance until it complied with the Open Door Law. Reichhart also sought attorney fees under Count I. Under Count II, Reichhart brought a citizen taxpayer challenge, seeking a declaration that the annexation was unlawful and prohibiting the City from proceeding with the annexation. The complaint did not mention that Reichhart was an employee of CWMI or that CWMI was supplying the legal representation.

After a hearing, the trial court granted Reichhart's petition for a TRO on the condition that Reichhart post a $100,000 bond. CWMI posted the bond on Reichhart's behalf. Upon granting the TRO, the trial court stated:

> 'I would tell you, and I specifically want to direct my comments to Mr. Miller and Mr. Harper, because I did not enter this order lightly, and it's [a] very narrowly drafted and defined order only prohibiting Council action on the ordinance in question, based on its introduction at the November 26[th] special session meeting. You can do whatever you want with regard to that ordinance from here on out. I am not restraining you from considering that ordinance from an ab initio standpoint from the start, and I want to make that clear to you, as counsel, for the City of New Haven.... I don't want to leave anyone with the impression that you cannot consider annexation of this property. You're welcome to do that, you just need to start from the beginning and do it.'...

---

1. That appeal involved the City's abuse of process claim against Reichhart and CWMI arising out of the same litigation.

On December 17, 1991, the City withdrew its annexation ordinance. An ordinance for the annexation of the land had not been reintroduced as of the date of the filing of [this] appeal.

On February 6, 1992, CWMI filed a petition with the Common Council of the City of Fort Wayne for the voluntary annexation of its real estate by the City of Fort Wayne. On February 24, 1992, the City filed its Counter–Claim and Third–Party Complaint claiming abuse of process. . . .

At the City's request, the action was venued to Wells Circuit Court. Thereafter, Reichhart filed an amended complaint. The City filed a counterclaim against Reichhart and a third-party claim against CWMI alleging in both that the TRO and the amended complaint were filed in order to delay the legitimate exercise of the City's legislative and civil powers and constituted an abuse of process. Reichhart and CWMI filed a motion for summary judgment on the City's abuse of process claim, which the court denied. After several Court of Appeals opinions addressed the subject of abuse of process, Reichhart and CWMI submitted a renewed request for summary judgment which the court again denied. The trial court certified its ruling for interlocutory appeal and this court accepted jurisdiction on January 11, 1996.

*Id.* at 29–30. We reversed the trial court's denial of Reichhart and CWMI's motion for summary judgment on their abuse of process claim and remanded with instructions to grant the motion. *Id.* at 34.

In the meantime, Reichhart had voluntarily moved to dismiss her taxpayer's challenge[2] (Count II of her complaint) without prejudice. The City opposed that motion since its motion for summary judgment on that count was still pending. The trial court dismissed Reichhart's taxpayer's action with prejudice and found the

City's cross-motion for summary judgment moot.

On September 2, 1997, the City filed an amended counter-claim and cross-claim, in which the City averred that the filing of the taxpayer's action constituted malicious prosecution. Reichhart and CWMI filed a motion to dismiss the City's amended claims for failure to state a claim upon which relief can be granted. After a hearing, the trial court dismissed the City's malicious prosecution claim pursuant to Trial Rule 12(B)(6).[3]

## DISCUSSION AND DECISION

### Standard of Review

■■■ A complaint may not be dismissed for failure to state a claim upon which relief can be granted unless it appears to a certainty on the face of the complaint that the complaining party is not entitled to any relief. *McQueen v. Fayette County Sch. Corp.*, 711 N.E.2d 62, 65 (Ind. Ct.App.1999), *trans. denied.* In ruling on a motion to dismiss for failure to state a claim, the trial court is required to view the complaint in a light most favorable to the non-moving party and with every intendment in his favor. *Id.* The court may only look to the complaint, and well-pleaded material must be taken as admitted. *Id.*

■■■ On appeal, this court views motions to dismiss for failure to state a claim with disfavor because such motions undermine the policy of deciding causes of action on their merits. *Hill v. Beghin,* 644 N.E.2d 893, 895 (Ind.Ct.App.1994), *trans. denied.* We will affirm the trial court's grant of a motion to dismiss when a complaint states a set of facts which, even if true, would not support the relief requested in that complaint. *Garage Doors of Indianapolis, Inc. v. Morton,* 682 N.E.2d 1296, 1301 (Ind.Ct.App.1997), *trans. denied.* Further, we will affirm a successful

---

**2.** *See* IND.CODE § 34–14–1–2.

**3.** We heard oral argument on May 15, 2000.

motion to dismiss if it is sustainable on any theory or basis found in the record. *Id.*

In its order dismissing the City's malicious prosecution claim, the trial court did not indicate on what ground it granted the motion to dismiss. In their appellate briefs, the parties address, therefore, three possible grounds for the trial court's ruling. As we have noted, we will affirm a successful motion to dismiss if it is sustainable on any theory or basis found in the record. *Id.*

### Law of the Case

 Reichhart and CWMI contend that the "law of the case" doctrine operates to bar the City's malicious prosecution claim in light of our decision in *Reichhart v. City of New Haven,* 674 N.E.2d 27 (Ind.Ct.App.1996), *trans. denied.* That doctrine requires a trial court to " 'apply the law as laid down by the appellate court.' " *Riggs v. Burell,* 619 N.E.2d 562, 564 (Ind.1993) (quoting *Dodge v. Gaylord,* 53 Ind. 365, 369 (1876)). The doctrine, however, " 'cannot be invoked, except as to such questions as have been actually considered and determined in the first appeal.' " *Egbert v. Egbert,* 235 Ind. 405, 415, 132 N.E.2d 910, 915 (1956) (quoting *Alerding v. Allison,* 170 Ind. 252, 258–59, 83 N.E. 1006, 1009 (1908)). Further, the doctrine cannot be invoked unless "what was first decided . . . clearly appear[s] to be the only possible construction of the opinion." *Egbert,* 235 Ind. at 417, 132 N.E.2d at 916. In other words, questions not conclusively decided in a prior appeal do not become the law of the case.[4] *Riggs,* 619 N.E.2d at 564.

 Reichhart and CWMI argue that the trial court was required to dismiss the City's malicious prosecution claim in light of our decision in *Reichhart* to overturn the trial court's denial of their motion for summary judgment on the City's abuse of process claim. The elements of a malicious prosecution claim are: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted with malice in doing so; (3) the defendant had no probable cause to institute the action; and, (4) the original action was terminated in the plaintiff's favor. *Trotter v. Indiana Waste Systems,* 632 N.E.2d 1159, 1164 (Ind.Ct.App.1994). Reichhart and CWMI contend that our determination that Reichhart's taxpayer challenge was "procedurally and substantively proper" and "authorized by statute and thus legitimate" shows conclusively that Reichhart had probable cause to bring the taxpayer challenge. *Reichhart,* 674 N.E.2d at 32. We disagree.

 Probable cause for the filing of a suit exists if, upon reasonable inquiry, a reasonable, intelligent, and prudent person would be induced to bring the action. *Trotter,* 632 N.E.2d at 1164. We characterized Reichhart's claim as "authorized," "legitimate," and "procedurally and substantively proper," which suggests that a finding of probable cause might well have been justified. But in *Reichhart,* we neither addressed nor decided the issue of probable cause, and we cannot say now that the "only possible construction" of that opinion supports a determination that the law of the case applies here. *See Riggs,* 619 N.E.2d at 564. We cannot insinuate probable cause into our ruling in *Reichhart.*

---

4. This court has sometimes mischaracterized the doctrine of the law of the case. We have stated that "All issues decided directly or *implicitly* in a prior decision are binding in all subsequent portions of the same case." *See, e.g., City of New Haven v. Chemical Waste Management of Indiana,* 701 N.E.2d 912, 919 (Ind.Ct.App.1998), *trans. denied* (emphasis added). Our supreme court, however, has not held that the law of the case applies to issues decided *implicitly.* To the contrary, the court has consistently noted that only issues *directly* or *conclusively* addressed by the court on appeal are binding. *See, e.g., Riggs,* 619 N.E.2d at 564; *Closson Lumber Co., Inc. v. Wiseman,* 507 N.E.2d 974, 977 (Ind.1987); *Matter of Lemond,* 274 Ind. 505, 510, 413 N.E.2d 228, 232 (1980); *Egbert,* 235 Ind. at 415, 417, 132 N.E.2d at 915–916.

Reichhart and CWMI contend that, on the facts of this case, the City's malicious prosecution claim was subsumed by its abuse of process claim and that, in effect, our opinion in *Reichhart* disposed of both. While abuse of process and malicious prosecution are related, they are independent torts. Here, the City had not moved to amend its cross-claim to include malicious prosecution when the trial court ruled on its abuse of process claim. Thus, malicious prosecution was not at issue when the trial court certified its ruling for interlocutory appeal. We decline to read into *Reichhart,* after the fact, an issue that was not before the trial court and that we did not consider in the first appeal. The resolution of an issue is not "the law of the case" unless both the court and the parties were aware or should have been aware that the issue was under adjudication. The law of the case doctrine is not, therefore, a valid basis on which to sustain the trial court's dismissal of the City's malicious prosecution claim.

## Right of Petition

Reichhart and CWMI contend, in the alternative, that the City's malicious prosecution claim failed to state a claim upon which relief can be granted because Reichhart had an absolute right of petition under the United States and Indiana Constitutions. The City responds that the right of petition is qualified and that no authority precludes its malicious prosecution claim. We conclude that the trial court properly granted Reichhart and CWMI's motion to dismiss the City's malicious prosecution claim pursuant to the right of petition under the First Amendment.[5] While we "traditionally foreswear deciding a constitutional question," where

"no non-constitutional grounds present themselves for resolving the case under consideration" we are constrained to pass on the constitutional issue. *Citizens Nat. Bank of Evansville v. Foster,* 668 N.E.2d 1236, 1241 (Ind.1996). Such is the case here.

Indiana Code Section 34–14–1–2[6] provides that a taxpayer can challenge the validity of a municipal ordinance "and obtain a declaration of rights, status or other legal relations thereunder." It is clear that Reichhart was within her statutory rights as a New Haven taxpayer in bringing her challenge to the City's proposed annexation ordinance.

A citizen's right to petition a governmental entity for redress of legitimate grievances is protected by the First Amendment to the United States Constitution. As the Supreme Court has recognized, "the rights to assemble peaceably and to petition for redress of grievances are among the most precious of liberties safeguarded by the Bill of Rights. These rights, moreover, are intimately connected, both in origin and in purpose, with the other First Amendment rights of free speech and free press." *United Mine Workers of Am., Dist. 12 v. Illinois Bar Ass'n,* 389 U.S. 217, 222, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967).

At issue here is whether a private citizen, like Reichhart, who exercises her constitutional right to petition the government is amenable to a malicious prosecution action. In considering this issue of first impression, we look to other precedents for guidance. We find the Supreme Court's treatment of so-called "sham" litigation[7] under the Sherman Anti–Trust

---

**5.** The parties' cursory arguments with reference to the Indiana Constitution do not warrant consideration here, especially since the primary arguments made on both sides are overwhelmingly grounded in the United States Constitution and we resolve the issue with a First Amendment analysis.

**6.** Previously codified at IND.CODE § 34–4–10–2.

**7.** "Sham" litigation is evident where a petition, "ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 144, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961).

Act[8] instructive. The Court "regard[s] as sham 'private action that is not genuinely aimed at procuring favorable government action,' as opposed to 'a valid effort to influence government action.'" *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 58, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) (quoting *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 500 n. 4, 108 S.Ct. 1931, 100 L.Ed.2d 497 (1988)). But, the Court has "repeatedly reaffirmed that evidence of anticompetitive intent or purpose alone cannot transform otherwise legitimate activity into a sham." *Id.* at 59, 113 S.Ct. 1920. In other words, "an objectively reasonable effort to litigate cannot be sham *regardless of subjective intent.*" *Id.* at 57 (emphasis added).

In extending that reasoning to claims of unfair labor practices, the Court held that "even an 'improperly motivated' lawsuit may not be enjoined under the National Labor Relations Act as an unfair labor practice unless such litigation is 'baseless.'" *Id.* at 59 (quoting *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 743–744, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983)). We find the Supreme Court's consistent refusal to consider a petitioner's motivation in pursuing legitimate claims

under the right of petition persuasive here. As the Court has stated:

> The right of the people to inform their representatives in government of their desires with respect to the passage or enforcement of laws cannot properly be made to depend upon their intent in doing so. It is neither unusual nor illegal for people to seek action on laws in the hope that they may bring about an advantage to themselves and a disadvantage to their competitors.... Indeed, it is quite probably people with just such a hope of personal advantage who provide much of the information upon which governments must act.

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 139, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961).

■ Thus, in the context of the Sherman Act and the National Labor Relations Act, it is settled that the First Amendment protects a citizen's right of petition regardless of intent. The same principle applies to the right of petition under the circumstances presented in this appeal. We conclude that where, as here, a qualified petitioner brings a legitimate claim against a governmental entity in the manner prescribed by law, that entity is prohibited from pursuing a malicious prosecution claim against the petitioner regardless of her motivation in bringing the petition.[9]

---

**8.** 15 U.S.C. § 1 *et seq.* (1890).

**9.** We find additional support for our conclusion in the following: "'the censorial power is in the people over the Government, and not in the Government over the people.' It would give public servants an unjustified preference over the public they serve, if critics of official conduct did not have a fair equivalent of the immunity granted to the officials themselves." *New York Times Co. v. Sullivan*, 376 U.S. 254, 282–83, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (quoting James Madison, 4 Annals of Congress, 934 (1794)). Pursuant to Indiana Code Section 34–13–3–3(5), governmental entities, such as the City, are immune from suits for malicious prosecution. *See also Butt v. McEvoy*, 669 N.E.2d 1015 (Ind.Ct.App.1996). It follows, then, that private citizens should have a "fair equivalent" of that immunity in light of their "censorial power" over the government.

The City contends that *McDonald v. Smith*, 472 U.S. 479, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985), justifies its malicious prosecution claim against Reichhart and CWMI. There, the Court ruled that petitioners enjoy only a qualified immunity under the right of petition where they express "libelous and damaging falsehoods in petitions to Government officials." *Id.* at 479, 105 S.Ct. 2787. The City urges us to equate Reichhart and CWMI's intent in filing Reichhart's petition with libelous intent. We see a clear distinction, however, between committing libel and pursuing a legitimate claim, however motivated, under the right of petition. Whereas libel is inherently "baseless," petitions to the government are not deemed "baseless" solely because of the petitioner's bad intentions. *See Bill Johnson's Restaurants, Inc.*, 461 U.S. at 743–44, 103 S.Ct. 2161. The federal "sham" litigation analyses apply here.

In her verified complaint, Reichhart alleged that the proposed annexation "ha[d] caused or threaten[ed] to cause a waste of public funds" and that it "[was] clearly and patently illegal and represent[ed] a clear abuse of discretion." Record at 20. We have previously considered the appropriate grounds for bringing a taxpayer's challenge to a proposed annexation ordinance and find that analysis instructive here:

> The action of the common council of a city to annex lands must be considered a proper subject of a taxpayer suit if wastage of public funds is evident or certain to occur as a result of annexation. Wastage in the sense of unauthorized expenditures for services to the annexed area would be certain if the council acted without jurisdiction over the subject matter. For example, according to both statutory and decisional law in this state, the council would lack jurisdiction to act ... where notice of impending annexation is lacking or improperly given the affected landowners. Attackable "wastage" in the sense hereinabove used would also occur where the annexation was clearly or patently illegal. Annexation can no longer be considered a purely discretionary act of the common council of the city. Ind.Ann.Stat. s 48—701 (Burns 1963) required that there be publication of the annexation ordinance for two consecutive weeks after its passage. Ind.Ann.Stat. s 48–702 (Burns 1963) prohibited further annexation attempts by the council for two years after a successful remonstrance. If in a given situation these or other illegal acts taint the annexation, wastage under the ordinance would be present or certain to occur. Wastage in the same sense would occur where the annexation deci-

sion constitutes a patent abuse of discretion.

*Montagano v. City of Elkhart,* 149 Ind. App. 283, 290–92, 271 N.E.2d 475, 480 (1971) (citations omitted). Here, the trial court issued a temporary restraining order prohibiting action on the proposed annexation ordinance because the City had failed to provide notice of the ordinance. The New Haven Common Council, therefore, lacked jurisdiction to act on the ordinance, and wastage was certain to occur. Reichhart had both standing and grounds to bring the taxpayer's challenge, and, as we concluded in *Reichhart,* her claim was "authorized by statute and thus legitimate." *Reichhart,* 674 N.E.2d at 32. On these facts, regardless of Reichhart's motivation, the City's malicious prosecution claim against Reichhart and CWMI cannot stand.[10]

### Conclusion

Reichhart's First Amendment right of petition prohibits the City from maintaining its malicious prosecution claim. We conclude, therefore, that the City has failed to state a claim upon which relief can be granted against Reichhart and CWMI. The trial court did not err when it dismissed the City's malicious prosecution claim pursuant to Trial Rule 12(B)(6).

Affirmed.[11]

FRIEDLANDER, J., and RILEY, J., concur.

---

**10.** We do not agree with Reichhart's broad assertion that she had an "absolute privilege" to maintain a taxpayer challenge without risking a malicious prosecution claim. It is more accurate to say that her taxpayer challenge was privileged because she was a qualified petitioner who brought her claim against the City in the manner prescribed by law.

**11.** We do not address the parties' arguments on the issue of a governmental entity's right to pursue punitive damages as we do not find that issue relevant to the 12(B)(6) motion.